# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SANDEEP BAROT, individually and on behalf of a class of others similarly situated | : : : : | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | : : | |
| v. | : : | |
| USPLABS, LLC., a Texas corporation, GENERAL NUTRITION CENTER HOLDINGS INC., a Delaware corporation, | : : : : : | |
| Defendants. | : : | |

Plaintiff, SANDEEP BAROT ("Plaintiff"), by and through his attorney, files this Class Action Complaint for Equitable Relief and Economic Damages on behalf of himself and all others similarly situated, against Defendants, USPLABS, LLC., a Texas corporation ("USPLabs"), and GENERAL NUTRITION CENTER HOLDINGS, INC., a Delaware corporation ("GNC"), wherein Plaintiff hereby alleges upon information and belief as follows:

## INTRODUCTION

1.  This is an economic consumer protection action seeking monetary and injunctive relief. USPLabs sells a variety of energy and weight loss dietary supplements under the brand name of OxyElite Pro™ (the "Product") through GNC, which are dangerous, sold pursuant to deceptive and unfair practices, and not fit for their intended purpose.

- 1 -

2.   The Product is intended to safely provide weight loss, energy, and mental focus.However, it instead causes severe adverse health effects. Plaintiff, and all other similarly situated consumers, did not bargain for a Product that causes adverse health effects in exchange for their payment of the purchase price.

3.   Several adverse reactions have been reported from consumers who have purchased and ingested the Product, including, but not limited to serious liver injury wrongful death.

4.   USPLabs and GNC had and has actual knowledge of the Product's shortcomings.

5.   But USPLabs and GNC failed to timely act to adequately warn consumers of:

6.   the unfitness of the Product;

7.   the extreme adverse side effects associated with the Product;

8.   or provide adequate relief to the putative Class of consumers who purchased the Product.

9.   Plaintiff contends that the Product does not work as impliedly warranted and as a result, misleads consumers into purchasing it.

10. The Product is sold pursuant to unfair and unconscionable trade practices because it offends public policy and is oppressive, unscrupulous and substantially injurious to consumers.

11. All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.


**PARTIES**

12. Plaintiff, Sandeep Barot, is an individual who currently resides in the State of Florida. From March 2010 to October 2011 he lived in the State of New Jersey.  While in New Jersey, he purchased one of the Products at issue: the OxyElite Pro™ 90 Count Super Thermo Capsules. Plaintiff purchased the Product approximately one bottle every two months while living in New Jersey.

Plaintiff paid approximately $40.00 each time he purchased the Product.  Plaintiff purchased the Products from a GNC store located in Deptford, NJ.

13. Plaintiff purchased the Product to safely obtain energy, to lose weight, and for an increase in mental focus;

14. But, it exposed Plaintiff to dangerous ingredients,

15. The dangerous ingredients rendered the Product unfit for human consumption, and therefore was not suited for the implied purpose the Product was sold.

16. Defendant, USPlabs, LLC., is a Texas corporation. Defendant lists with the Texas Secretary of State a principle place of business located at 10761 King William Drive, Dallas, TX 75220, and a registered agent for serviced of process by the name of CT Corporation System, 350 North St. Paul Street, Ste. 2900, Dallas, TX 75201. For purposes of diversity, USPLabs is a "citizen" of the State of Texas. USPLabs owns and maintains an interactive website, *http://www.usplabsdirect.com* which is accessible to citizens of this judicial district, and which sells the Product in this jurisdiction and in this judicial district.

17. Defendant, GNC Holdings, Inc., is a Delaware corporation that lists its principal place of business at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.  For purposes of diversity, GNC is a "citizen" of the state of Delaware. GNC owns and maintains an interactive website, http://www.gnc.com/home/index.jspwhich is accessible to citizens of this judicial district, and which sells the Product in this jurisdiction and in this judicial district.

18. Plaintiff is informed and believes that Defendants and their employees, subsidiaries, affiliates and other related entities, were acting within the purpose and scope of their agency and employment.

19. Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

**JURISDICTION**

20. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a state different from any Defendants, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. The amount in controversy is based upon information and belief, and the evidence to support the computation for the amount in controversy will be established during the course of discovery.

21. Plaintiff alleges that the total claims of individual members of the Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). Plaintiffs are mostly citizens of the State of New Jersey, and as set forth above, Defendant USPLabs is a citizen of the State of Texas and Defendant GNC is a citizen of the State of Delaware. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

22. Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than New Jersey, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B). In fact, there are well over thousands, and even millions of consumers affected by the purchase of the Product as herein described.

23. Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because Defendants venue business within, may be found in, and is subject to personal jurisdiction in this district.

24. All witnesses to the transaction between GNC and Plaintiff are located in this vicinage.

25. Plaintiff's witnesses are predominantly located within this vicinage.

26. The actual transactions at issue occurred in this vicinage.

## FACTUAL ALLEGATIONS

27. Defendant USPLabs sells a variety of OxyElite Pro™ dietary supplements.

28. The specific products sold under the brand name OxyElite Pro™, which are included within the Product definition at issue in this action, include, but are not limited to:

- OxyElite Pro Super Thermo capsules
  - two count capsules UPC #094922417275
  - 10 count capsules UPC #094922417251
  - 10 count capsules UPC #094922417268
  - 21 count capsules UPC #094922426604
  - 90 count capsules UPC #094922395573
  - 90 count capsules "Pink label" UPC #094922447906
  - 180 count capsules UPC #094922447852

- OxyElite Pro Ultra-Intense Thermo capsules
  - three count capsules UPC #094922447883
  - three count capsules UPC #094922447876
  - 90 count capsules UPC #094922395627
  - 180 count capsules UPC #094922447869

- OxyElite Pro Super Thermo Powder
  - Fruit Punch 0.15 oz UPC #094922417237
  - Fruit Punch 0.15 oz UPC #094922447517
  - Fruit Punch 4.6 oz UPC #094922426369
  - Fruit Punch 5 oz. UPC #094922447487
  - Blue Raspberry 4.6 oz UPC #094922426376
  - Grape Bubblegum 4.6 oz UPC #094922447500
  - Green Apple 4.6 oz. UPC #094922426499

Because each product contains Aegeline, an adulterated product.

29. Defendant GNC sold OxyElite Pro™ products in the state of New Jersey from Jan. 27, 2008 to Nov. 9, 2013.

30. On April 27, 2012, the United States Food and Drug Administration ("FDA") issued a warning to Defendant USPLabs regarding use of dimethylamylamine ("DMAA") in OxyElite Pro™ and Jack3d.[1]

---

[1] See FDA Warning Letter, dated April 12, 2013 (located at
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm302167.htm)(last visited Jan. 27, 2014)

31. On July 20, 2012, USPLabs entered into a settlement agreement with class members in *Hogan v. USPLabs, LLC.* (Case No. BC486925, Superior Court of the State of California – Los Angeles County).

32. That settlement provided refunds for class members who purchased OxyElite Pro™ and Jack3d.

33. That action was based upon USPLabs' inclusion of the ingredient DMAA in those products.

34. During and subsequent to *Hogan v. USPLabs, LLC*, Defendant USPLabs contained and or included another dangerous ingredient in OxyElite Pro™ named Aegeline.

35. Upon information and belief, the *Hogan* settlement was based upon the same adulteration theory as alleged here.  Therefore, Defendant's knew or should have known of the consequences of adulteration.

36. On October 11, 2013, the FDA issued a warning letter to Defendant USPLabs regarding the Product.[2]

37. The labeling of this Product shows that it contains Aegeline, also referred to as N-[2-hydroxy-2(4-methoxyphenyl) ethyl]-3-phenyl-2-propenamide, identified as a dietary ingredient.

38. Because Aegeline is a "new dietary ingredient" (i.e., not marketed in the United States before October 15, 1994), it was deemed adulterated under 21 U.S.C. 342(f).[3]

39. Neither aegeline nor DMAA, upon information and belief, was lawfully marketed as a dietary ingredient in the United States before October 15, 1994.

40. Neither aegeline nor DMAA, upon information and belief, has been demonstrated as an ingredient in the food supply as an article used for food in a form in which food has not been chemically altered.[4]

---

[2] See FDA Warning Letter, dated October 11, 2013 (located at
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2013/ucm371203.htm)(last visited January 27, 2014).
[3]*Id.*

41. Neither aegeline nor DMAA, upon information and belief, is reasonably expected to be safe when used under the conditions recommended on the Products' labeling.

42. Public health officials throughout the United States are actively investigating a number of severe illnesses characterized by hepatotoxicity by consumers of the Product relating to aegeline.[5]

43. Several findings present a causal connection exist between ingestion of the Product and the illnesses reported.

44. In a review of twenty (20) medical records initially submitted to FDA by the Hawaii Department of Health, fourteen (14) patients (70%) had ingested the Product prior to becoming ill.

45. There were no other consistent commonalities among the fourteen (14) patients other than exposure to the Product.

46.  Importantly, eight (8) patients reported the Product as the sole dietary supplement they took prior to becoming ill, and most of these patients had been entirely healthy before they became ill.

47. Upon discontinuing the Product following onset of illness, most patients recovered from their illness, implying the Product was the cause of the illness.

48. Several patients sustained injuries to the liver that required transplantation, and one patient died before transplantation could be undertaken.

49. Rigorous clinical protocols were followed in the care of the patients to exclude and/or rule out known causes of liver disease. The absence of these causes of liver disease increases the likelihood that the Product played a hepatotoxic role in these patients. Therefore, in the absence of a history of use or other evidence of safety establishing that Aegeline is reasonably expected to be safe under the conditions recommended or suggested in the labeling of the Product, it is deemed to be adulterated under 21 U.S.C. 342(f).[6]

---

[4]*Id.*
[5]*Id.*
[6]*Id.*

50. In response to the FDA's warning letter stating "[f]ailure to immediately cease distribution of all products containing aegeline may result in enforcement action by FDA without further notice."

51. Thus, Defendant USPLabs issued a recall of the Product nearly a month later on or about November 9, 2013.[7]

52. In addition to the Products being recalled, the FDA continues to advise consumers not to use any of the Products.[8]

53. But Defendants have taken no action to provide notice to purchasers.

54. As of November 10, 2013, a review of 46 medical records submitted to the FDA by the Hawaii Department of Health, 27 patients, or 58 percent, had taken the Product prior to becoming ill.

55. Seventeen of the 27 patients (or 63 percent) reported that the Product was the only dietary supplement they were taking.

56. One death has occurred among these patients, another patient has required a liver transplant, and others await liver transplants.[9]

57. Defendant USPLabs is voluntarily conducting a national recall of all lots and sizes of the Product because they contain aegeline, a synthesized version of a natural extract from the Bael tree.[10]

58. Epidemiological evidence shows that use of the Product has been associated with the reported serious adverse health consequences.[11]

59. Defendants USPLabs and GNC marketed and sold the Product without a proper and adequate warning, and without modifying the Product so it could be fit for human consumption.

60. Defendants USPLabs and GNC make affirmative representations they are a reputable, reliable, safe manufacturer and distributor(s) respectively.

---

[7] FDA Website, USPlabs LLC recalls OxyElite Pro dietary supplements; products linked to liver illness (available at http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm374395.htm) (last visited December 4, 2013).
[8] *Id.*
[9] *Id.*
[10] *FDA Website*, USPlabs LLC Announces a Recall of OxyElite Pro Dietary Supplements Due to Possible Health Risk (available at http://www.fda.gov/safety/recalls/ucm374394.htm) (last visited December 4, 2013).
[11] *Id.*

61. Plaintiff purchased the Product based on the Product's affirmative representation that it would safely provide energy, increase weight loss, and increase mental focus so long as the consumer used the Product as directed.

62. Plaintiff has suffered economic damages as a result of purchasing the Product, in that, among other things, he spent money on a Product that was unfit for human consumption—and therefore lacked the value he had been led to believe the Product had—and for which he paid in the purchase price of the Product.

63. An average and reasonable consumer would not expect the Product to inflict such adverse side effects when consumed as instructed.

64. Defendant USPLabs' labeling convey a series of implied claims and/or omissions which it knows are material to the reasonable consumer, and which it intended for consumers to rely upon when choosing to purchase the Product.

65. Defendant USPLabs' inadequate labeling is an unfair trade practice because the ingredients render it unfit for safe use and reasonable consumers have suffered severe adverse side effects from taking it.

66. Plaintiff, and no other reasonable consumer, would not have purchased the Product had they known about the severe adverse effects the Product can cause to humans. A lack of an adequate warning and the severity of the adverse side effects is material to the average consumer.

67. Plaintiff would not have purchased the Product had he known the truth about it.

## CLASS ALLEGATIONS

68. Plaintiff incorporates all previous paragraphs alleged in this Complaint as if fully alleged herein.

69. Plaintiff brings this action on behalf of himself and all other similarly situated consumers pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The Class of persons whom Plaintiffs seek to represent is defined as:

a)      All United States persons who, within the applicable statute of limitations, purchased the Product, for personal use and not resale, through and to the date Notice is provided to the Class.

b)      Plaintiff reserves the right to broaden or narrow the Class after a reasonable opportunity to conduct discovery.

c)      Excluded from the Class are Defendants, any parent, subsidiary or affiliate of Defendants, any entity in which Defendants have a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

70. Plaintiff and Class members are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

71. There are questions of law and fact common to the Class.

72. Plaintiff's claims are typical of the claims of other Class members. The named Plaintiff is a member of the Class of affected consumers described herein.

73. The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

74. The self-interests of the named Class representatives are co-extensive with, and are not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

75. The named Plaintiff has engaged the services of counsel indicated below. Counsel are adequately experienced in complex class action litigation, will effectively prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

76. This action is also appropriate as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

77. This action involves questions of law and fact common to Plaintiff and all members of the Class. These common questions predominate over any issues affecting individual members of the Class and include:

a)        Whether Plaintiff's are entitled to punitive damages;

b)        Whether Defendants' business activities within New Jersey should be curtailed or prohibited;

c)        Whether Defendants engaged in unfair methods of competition; unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its labeling and advertising of the Product;

d)        Whether Defendants materially misrepresented that the Product was safe to consume even though it has harmful and adverse effects;

e)        Whether Defendants knew that the Product has harmful effects;

f)        Whether Plaintiff and Class members are entitled to injunctive relief enjoining Defendants from continuing to fail to disclose that the Product has severe adverse and harmful effects that may require hospitalization;

g)        Whether Defendants should be made to engage in a corrective advertising campaign advising consumers that the Product has the adverse and harmful effects; and

h)        Whether Plaintiff and Class Members have been harmed and the proper measure of relief.

- 11 -

78.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

79.     There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class members to pursue remedies individually.

80.     The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against Defendants and would establish incompatible standards of conduct for Defendants.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a)      Given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b)      When Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c)      This action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d)      Without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct.

82. Plaintiff knows of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance as a class action.

83. Defendants have acted on grounds applicable to the Class generally; therefore, Plaintiff seek equitable and injunctive relief on behalf of the entire Class on grounds generally applicable to the entire Class.

## COUNT ONE
## NEW JERSEY CONSUMER FRAUD ACT ("NJ CFA")

84. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if set forth herein at length.

85. Plaintiff brings this action pursuant to the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, et seq. ("NJ CFA").

86. Defendantshave engaged in unlawful conduct by selling supplements that cause physical harm in the state of New Jersey.

87. As a result of this unlawful conduct, Plaintiffs have suffered economic damage, physical damage and emotional distress damages.

88. Defendants made affirmative representations regarding safety and efficacy.

89. Defendants are liable *per se* under the NJ CFA.

90. Defendants conduct is otherwise unconscionable.

91. WHEREFORE, Plaintiffs pray for judgment against Defendants for damages and relief as set forth below.

## COUNT TWO
## UNJUST ENRICHMENT

92. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through eighty-three (83) of this Complaint as if fully set forth herein.

93. Plaintiff and Class members conferred a benefit on Defendants by purchasing the Product at a premium price.

94. Defendants received the money paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

95. Defendants accepted and retained the benefit in the amount of the profits it earned from sales to Plaintiff and Class members.

96. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

97. As a result of purchasing the Product, Plaintiff and the Class spent money on a useless Product that they otherwise would not have purchased.

98. There was no and/or an inadequate warning/disclaimer on the Product informing Plaintiff of the severity of the adverse health effects, the potential for hospitalization and liver illness, the true strength of the Product, and the dangers of consuming the Product.

99. Pursuant to Fed. R. Civ. P. 8(d)(2)-(3), Plaintiff (alternatively) does not have an adequate remedy at law against Defendants.

100.     Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product, over and above what they would have paid had they known that the Product was not safe when consumed in that it had harmful effects. Because Plaintiff and the Class would not have paid anything for the Product had they known it was unfit, Plaintiff and the Class are entitled to restitution of the full purchase price.

101.     WHEREFORE, Plaintiffs seek relief in the form of injunctive relief in the form of corrective advertising, equitable relief including restitution, pre and post judgment interest, reimbursement of costs, reasonable attorney's fees, and for any other relief that this Court deems just and proper, as set forth more fully below in the Prayer for Relief section of this Complaint.

- 14 -

## COUNT THREE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

102.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through eighty-three (83) of this Complaint as if fully set forth herein.

103.    Plaintiff and other members of the Class sought an energy enhancing and weight loss product that would safely provide the purported benefits. In doing so, Plaintiff and other Members of the Class reasonably relied on Defendants' skill and judgment to select and furnish suitable goods for that purpose, and on or about that time, Defendants sold the Product to Plaintiff and other members of the Class.

104.    Plaintiff and Class members were the foreseeable users of the Product.

105.    At the time of sale, Defendants had reason to know the of the ordinary and intended purpose for which the goods were required, to safely provide energy, increase weight loss, improvement in mental focus, and that Plaintiff and members of the Class were relying on Defendants' skill and judgment to select and furnish suitable and harmless goods, so there was an implied warranty that the goods were fit for this intended and ordinary purpose.

106.    However, Defendants breached the warranty implied at the time of sale in that Plaintiff and members of the Class did not receive suitable goods, but rather defective and non-merchantable goods, and the goods were not reasonably fit for the intended purpose for which they were made, as set forth above. The Products defective nature existed at the time the Product left the possession of the Defendants. Additionally, as set forth above, the Product was inadequately packaged and labeled.

107.    The product was used in its intended manner by Plaintiff and the Class.

108.    As a proximate result of this breach of warranty by Defendants, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial, in that they were induced to purchase a product they would not have purchased had they known the true

- 15 -

facts about, and that lacks the value Defendants represented the Product had, which was reflected in the purchase price.

WHEREFORE, Plaintiffs seek relief in the form of actual and compensatory damages, injunctive relief in the form of corrective advertising, equitable relief including restitution, pre and post judgment interest, reimbursement of costs, reasonable attorney's fees, and for any other relief that this Court deems just and proper, as set forth more fully below in the Prayer for Relief section of this Complaint.

**COUNT FOUR**
**<u>VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301 *et seq.*).</u>**

109.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through eighty-three (83) of this Complaint as if fully set forth herein.

110.     Defendants have breached implied warranties regarding the Product. Thus, pursuant to Fed. R. Civ. P. 10, Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 70 through 76, as if fully set forth herein.

111.      Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

112.     Defendantsare a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

113.     The Product is a consumer product as defined in 15 U.S.C. § 2301(6).

114.     By reason of Defendants' breach of the above implied warranty merchantability, Defendants have violated the statutory rights due to Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301 *et seq.*, thereby economically damaging Plaintiff and the Class. The Act is intended to increase the enforceability of these warranties.

115.     **Therefore**, Plaintiff and the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty act.

- 16 -

## DAMAGES

1.   Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if set forth herein at length.

2.   As a direct and proximate result of the above-described conduct, Plaintiff has in the past suffered, and will in the future continue to suffer, damages including:

(a)   Physical injury;

(b)   Loss of wages;

(c)   Medical expenses;

(d)   Costs for investigation and repair; and

(e)   Attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiffs seeks judgment against the Defendants as follows:

(a) That the Court and jury enter a declaratory judgment and find that Defendants violated the NJ CFA, were unjustly enriched, breached the implied warranty of merchantability, and violated the Magnuson-Moss Warranty Act;

(b) That the Court and jury award an injunction against unlawful practices including:

i.   revoking the certificate of authority for Defendants to do business in this state under the NJ CFA and;

ii.  notice to consumers that the product is dangerous;

(c) That the Court and jury award Plaintiff restitution as permitted under the NJ CFA;

(d) That the Court award Plaintiff such treble damages as allowed under the

NJ CFA;

(e) That the Court and jury award such punitive damages as are allowed under the NJ CFA;

(f) That the Court and jury award Plaintiff such compensatory damages allowable by law;

(g) That the Court and jury award such declaratory, actual and nominal damages as are allowed at law;

(h) That the Court award such attorney fees, costs and expenses, pre- and post- judgment interest as are allowed at law;

(i) That the Court order such further relief as the Court deems appropriate.

## **<u>JURY TRIAL</u>**

Plaintiff demands a jury as to all issues.

WILLIAM RIBACK, LLC

Dated: 1/27/2014

/s_____
William Riback, Esquire
The Law Offices of William Riback, LLC
132 N. Haddon Ave.
Haddonfield, NJ 08033